**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| WANDA CORDOVA | CIVIL ACTION NO. 04-1499 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| THE CITY OF MANSFIELD | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 23) filed by the defendant, the City of Mansfield ("the City"). The plaintiff, Wanda Cordova ("Cordova"), filed the instant suit against the City asserting that she was discriminated against on the basis of her sex and retaliated against, all in violation of Title 42, United States Code, Section 1983 and Louisiana state law. The City's motion seeks to have all of Cordova's claims dismissed. For the reasons which follow, the City's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**I.    FACTUAL AND PROCEDURAL HISTORY.**

Cordova, a white female, was employed by the City for approximately 26 years. See Record Document 1, ¶ 4. Her first date of employment was June 1, 1978. See id. In the early 1980s, the City opened a water treatment plant at the Toledo Bend Reservoir and Cordova was employed at this plant as a water treatment plant operator. See Record Document 23, ¶ 2. Cordova possessed three water-related certifications through the Louisiana Department of Health. See Record Document 28 at 2. Cordova remained in her position as water treatment plant operator at the Toledo Bend plant until 1997. See Record Document 23, ¶ 2.

In her position as water treatment plant operator, Cordova's supervisor was Richard

Plunkett ("Plunkett"), who served as the water treatment plant manager. See id. Plunkett retired in October 1997 and was replaced by David Ryals ("Ryals"). See id., ¶ 4 & 6.

Much of the factual background set forth by both parties in their briefs deals with alleged actions of the City and Ryals in 1997 and 1998. For instance, Cordova alleges that she was the more qualified candidate to replace Plunkett; that Ryals made derogatory comments about blacks and women in 1997; that she complained to the City about its failure to promote her and about Ryals' derogatory comments; and that she was reassigned to the "in town" water treatment plant as a result of her complaints. See Record Document 28 at 1-5. Cordova further alleges that her 1998 suspension was also retaliatory. See id. at 4. Likewise, Cordova details the events surrounding a recommended termination in 1998. Cordova states that Jimmy Ruffin ("Ruffin"), the City's Public Works Director, recommended her termination in November 1997 and that the termination was approved by the Mayor on May 28, 1998. See id. However, the Board of Aldermen refused to terminate Cordova and she remained employed in the City's "in town" water treatment plant, in what Cordova called an "isolated job." See id. at 5.

Despite all of the time spent by Cordova outlining events that allegedly occurred in 1997 and 1998, she admits more than once that her "present claims stem from her termination on June 30, 2004." Record Document 28 at 1. Thus, the relevant factual background for the instant matter and the scope of the instant lawsuit is limited to the events that occurred in June 2004.[1]

On June 30, 2004, Cordova was terminated by the Mayor and Board of Aldermen

---

[1]This issue is analyzed more fully in section II(B)(1) of the instant Memorandum Ruling.

as an employee of the City of Mansfield.  See Record Document 23, Letter attached to Exhibit E (Affidavit of City Clerk).  Specifically, Curtis W. McCoy, the Mayor of the City of Mansfield ("the Mayor"), stated in a June 30, 2004 letter to Cordova:

> You were terminated as of June 30th by the Mayor and Board of Aldermen as an employee of the City of Mansfield.  Your position is being eliminated and your services are no longer needed.

Id.  Cordova maintains that the City's reason for her termination was a "sham."  Record Document 1, ¶ 14.  Cordova alleges that Ruffin told her "that he 'wanted to hire a pipefitter and other skilled workers' with the money used to employ" her.  Record Document 28, Exhibit D (Cordova Affidavit).  Cordova further states that the Mayor offered her $5,000.00 to leave the City quietly.  See id.  Cordova alleges that the 2004 actions she has outlined constitute sex discrimination and/or retaliation and that she was forced to endure the City's discriminatory and retaliatory practices.  See Record Document 1, ¶ 16.

Cordova filed the instant suit on July 20, 2004, alleging that she was discriminated against on the basis of her sex and retaliated against, all in violation of Title 42, United States Code, Section 1983 and Louisiana state law.  See Record Document 1.  The City answered the complaint on September 9, 2004.  See Record Document 6.  Also on September 9, 2004, the City filed a Motion to Dismiss attacking Cordova's Louisiana Title 23 claims on the grounds that she failed to give pre-suit notice required under Title 23. See Record Document 7.  The Court dismissed Cordova's Title 23 claims under Louisiana law on December 27, 2004.  See Record Document 12.  The City later filed the instant Motion for Summary Judgment, seeking dismissal of all of Cordova's remaining claims. See Record Documents 6 & 23.  Cordova has timely opposed the Motion for Summary Judgment.  See Record Document 28.

## II. LAW AND ANALYSIS.

### A. Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.

Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id.; see also Little, 37 F.3d at 1076.

**B.    Title 42, United States Code, Section 1983.**

Cordova alleges discrimination based on her sex and retaliation, all in violation of 42 U.S.C. § 1983. See Record Document 1, ¶ 17. Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Section 1983 does not create any substantive rights, rather,

it is simply a procedural vehicle that provides a remedy for deprivation of rights established elsewhere. See San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5 Cir. 1991).

To sustain an action under section 1983, the claimant must identify a protected life, liberty, or property interest, and then prove that government action resulted in a deprivation of that interest. See id. Here, Cordova alleges that the City of Mansfield denied her equal protection under the Fourteenth Amendment and retaliated against her in violation of the First Amendment. Claims under section 1983 may be asserted against a state or local governing body "where official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution." Bennett v. Slidell, 728 F.2d 762, 766 (5th Cir.1984); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 2036 (1978). Municipal liability under section 1983 "requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom. The policymaker must have final policymaking authority. Municipal liability cannot be sustained under a theory of *respondeat superior*. The unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Rivera v. Houston Independent School Dist., 349 F.3d 244, 247 (5th Cir. 2003).

    **1.**    **Prescriptive Period.**

The City argues that "any claims . . . Cordova has for conduct prior to July 19, 2003 should be dismissed as time barred." Record Document 23-1 at 4. In her opposition brief, Cordova states that she "is not seeking any relief for the City's actions in 1997," even admitting that any claims based on such actions "were barred by prescription." Record

Document 28 at 9. Cordova further references "the City's actions against Ms. Cordova which took place in 1997" and admits that "these are not claims which are being asserted in this case." Id. at 10. Finally, Cordova even admits that her "present claims stem from her termination on June 30, 2004." Id. at 1.

Section 1983 does not specifically delineate a prescriptive period. However, it is well established that courts apply the applicable state statute of limitations in section 1983 actions. Thus, in this case, Louisiana's one year prescriptive period for delictual actions applies. See La. C.C. 3492; Adams v. Jefferson Davis Parish School Bd., 450 F.Supp. 1141, 1144 -1145 (W.D. La. 1978); Jones v. Orleans Parish School Bd., 688 F.2d 342, 344 (5th Cir. 1982). In light of this one year prescriptive period and Cordova's own admission that she "is not seeking any relief for the City's actions in 1997," it is clear that the scope of this lawsuit is limited to the City's alleged discriminatory actions in the year 2004.[2]

## 2. Equal Protection (Fourteenth Amendment) Claim.

Cordova argues that her 2004 termination was based on her sex and was thus discriminatory and a violation of the Fourteenth Amendment's Equal Protection Clause. As stated previously, it is well settled that a municipality is liable under section 1983 for a

---

[2]In her original complaint, Cordova alleged that certain actions in the workplace created a hostile work environment, in violation of Louisiana law and 42 U.S.C. § 1983. See Record Document 1, ¶ 17. Yet, Cordova does not mention such claim in her opposition brief. Thus, it appears that Cordova may have abandoned her hostile work environment claim.

Notwithstanding, even if Cordova is still pursuing her hostile work environment claim, such claim is untimely. Cordova's complains that Ryals was hostile and made derogatory comments about women and blacks. Cordova recalled that these events occurred in 1997 or 1998. In light of the one year prescriptive period applicable to section 1983 actions and because of Cordova's own admission that she is not seeking any relief for actions in 1997 or 1998, Cordova's hostile work environment claim is time barred.

deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. The Fifth Circuit has defined "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984).

It is clear that the City does not have a policy statement, ordinance, or regulation allowing gender based discrimination. In fact, the record clearly evidences that the City adopted a resolution pertaining to equal opportunity complaint procedures in April 1991, which states:

> Discrimination against any person in recruitment, examination, appointment, training, promotion, retention, discipline, or any other aspect of personnel administration because of political or religious opinions or affiliations or because of race, color, national origin, marital status, or other non-merit factors is prohibited. Discrimination on the basis of age or sex or physical disability is prohibited except where specific age, sex, or physical requirements constituted a bona fide occupational qualification necessary to proper and efficient job performance.

Record Document 23, Resolution attached to Exhibit E (Affidavit of City Clerk). However, the Court has reviewed Cordova's complaint and the summary judgment record and finds that Cordova has identified "a . . . decision that is officially adopted and promulgated by the municipality's lawmaking officers," as she has shown that the Mayor and the Board of Aldermen[3] terminated her on June 30, 2004. See Record Document 23, Letter attached

---

[3]The Charter of the City states that "the Mayor and the Board of Alderman shall have the care, management and control of the municipal corporation (the Town [City] of

to Exhibit E (Affidavit of City Clerk). Thus, the decision by the Mayor and the Board of Aldermen classifies as an official policy for purposes of section 1983 municipal liability. See Webster, 735 F.2d at 841.

"Employment discrimination claims brought under 42 U.S.C. § . . . 1983 . . . are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e *et seq.*" Lawrence v. University of Texas Medical Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999). The Fifth Circuit now employs a merged McDonnell Douglas and Price Waterhouse approach to Title VII cases. See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). "Under this integrated approach . . .: the plaintiff must still demonstrate a *prima facie* case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative)." Id. If the plaintiff can demonstrate that his or her protected class was a motivating factor in the employment decision, then the defendant must prove that the same adverse employment decision would have been made regardless

---

Mansfield)." Record Document 23, Exhibit D (Charter), Section 7. Further, Section 3 of the Charter vests the Mayor and the Board of Aldermen with the authority to terminate employees. See id., Section 3. Based on these provisions, there is no dispute that the Mayor and the Board of Aldermen were policymakers. Further, there appears to be no dispute amongst the parties that the Mayor and the Board of Aldermen were the policymakers involved in this case.

of its discriminatory animus. See id. If the defendant fails to carry this burden, then the plaintiff prevails. See id.

Here, the Court will assume for purposes of this Memorandum Ruling that Cordova has demonstrated a *prima facie* case of gender discrimination. The City has also come forward with a legitimate, non-discriminatory reason for its decision to terminate Cordova. In his deposition, the Mayor stated:

> Well, when I was elected mayor, my job was to try to find all funds available for the City of Mansfield and to cut back on certain things that we didn't need. And upon checking into the city budget and everything, I found that Ms. Cordova had a job making a little over $30,000 a year, and the job was only taking about three hours for what she was doing. And in my opinion, I just didn't think it was worth three hours of work for $30,000, so the position was terminated and never filled.

Record Document 28, Exhibit F (Deposition of Mayor Curtis McCoy) at 5-6. Thus, according to the Mayor, Cordova's position was recommended for elimination in 2004 for budgetary reasons.[4] Now, Cordova must offer sufficient evidence to create a genuine

---

[4]This fact was contained in paragraph 24 of the City's concise statement of material facts as to which there is no issue to be tried. See Record Document 23, ¶ 24. Cordova responded that this fact was disputed, but provided no further explanation.
Local Rule 56.2 states:

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

Cordova did not identify any specific evidence in the record to dispute the City's aforementioned statement of fact and it is not this Court's duty to perform that task for Cordova. See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Based on Fifth Circuit case law and the local rules, this Court deems the City's Statement of Fact #24 admitted.

issue of material fact (1) that the City's reason is not true, but is instead a pretext for discrimination; or (2) that the City's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is Cordova's protected characteristic, i.e., her gender. Cordova can satisfy neither the pretext nor the mixed-motives alternative.

To show pretext, Cordova must "present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir.2000). Cordova cannot rely on tenuous inferences or her own subjective beliefs. See Crawford, 234 F.3d at 903; Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir.1995). Simply put, this Court must determine if Cordova has presented sufficient evidence of pretext for a rational jury to decide this case in her favor by finding that her termination was due to her gender. See Pippins v. Tangipahoa Parish Council, No. 04-30817, 2005 WL 159600, **1 (5th Cir. Jan. 26, 2005).

Cordova argues that the City's "offered reasons . . . have been shown to be questionable, at best." Record Document 28 at 13. As evidence of pretext, Cordova seems to argue that the City represented to her they had "no work" and "no position" for her. Record Document 28 at 7.[5] This is incorrect, as the City stated that her position had been terminated for budgetary reasons. Further, "as a non-civil service employee,

---

[5]Along this same line of reasoning, Cordova alleges that the City's justification for her termination was futile because there was a position available for her at the time of her termination – the position of a water treatment operator at the Toledo Bend plant. See Record Document 28 at 5-6. But again, the City's proffered reason for her termination was that her position was terminated for budgetary reasons and, because she was a non-civil service employee, the City was under no legal obligation to put Cordova in another position.

[Cordova] serve[d] at the will of [her] superiors and [could] be discharged for any legitimate reason or even for no reason at all." McCormick v. Edwards, 646 F.2d 173, 175 (5th Cir. 1981).

Cordova also focuses on the City's actions after her termination. She alleges that the City had been violating state standards at the Toledo Bend water treatment plant by failing to have each shift covered by a properly licensed operator and that the City was notified of such violation a few days after her termination. See id. at 6. She argues that the City's decisions to have employees incur overtime, rather than hiring a new, licensed employee, to remedy the violations and to later run the plant "out of compliance" are evidence of pretext. Id. at 6-7.

Here, the Court finds that Cordova has presented only tenuous inferences and her own subjective beliefs that the City's proffered budgetary reason was pretext. Cordova's argument that the City told her they had "no work" and "no position" for her bears little weight, as nothing in the record supports this argument and the City's proffered reason relates to budgetary concerns, not lack of work. Further, as stated by the City in its reply brief, nothing in the record suggests that it would have been cheaper for the City to maintain another full time licensed operator rather than incur overtime expenses. See Record Document 33 at 9-10. Cordova has not presented sufficient evidence of pretext for a rational jury to decide this case in her favor by finding that her termination was due to her gender.

Likewise, Cordova does not satisfy the mixed-motives alternative, as she has not demonstrated that while the City's budgetary reason was true, it was only one of the reasons for her termination and another "motivating factor" was her gender. Nowhere in

her opposition brief or her deposition does Cordova present evidence that gender played a role in her termination. In her deposition, Cordova stated that she could not remember if anyone ever said that they felt like the sex of a person made a difference in how they were treated from an employment standpoint at the City of Mansfield. See Record Document 23, Exhibit A at p. 87, lines 2-6. The record is simply devoid of any evidence that gender was a motivating factor in the City's decision to terminate Cordova.

Based on the foregoing, Cordova's equal protection claim pursuant to section 1983 fails, as she has not come forward with sufficient evidence to create a genuine issue of material fact that the City's proffered budgetary reason is not true or that the City's budgetary reason, while true, is only one of the reasons for its conduct, and another of its motivating factors was Cordova's gender.

### 3. Retaliation (First Amendment) Claim.

Cordova also alleges that her 2004 termination was retaliatory. Because Cordova is pursuing her retaliation claim under section 1983, she must first identify a protected life, liberty, or property interest, and then prove that the City's action resulted in a deprivation of that interest. See San Jacinto Sav. & Loan, 928 F.2d at 700. Both the City and the Court interpreted Cordova's complaint as stating a First Amendment retaliation claim. Yet, in her opposition brief, Cordova states:

> [T]he City focuses on cases dealing with First Amendment speech issues. . . . [T]hese cases are inapplicable to this case . . . .

Record Document 28 at 11. The Court construes this statement as a concession by Cordova that she is not pursuing a First Amendment retaliation claim. Because, as a matter of law, there is no such thing as a retaliation claim under the Equal Protection

Clause, Cordova seems to have abandoned any federal retaliation claim. See Burnheim v. Litt, 79 F.3d 318, 323 (2nd Cir. 1996); Ratliff v. DeKalb County, 62 F.3d. 338, 340-341 (11 Cir. 1995) (no clearly recognized right to be free from retaliation exists under the Equal Protection Clause); Gray v. Lacke, 885 F.2d 399, 414, (2nd Cir. 1989), *cert. denied*, 494 U.S. 1029, 110 S. Ct. 1476 (1990), Beardsley v. Webb, 30 F.3d 524, 529-30 (4th Cir. 1994); Gates v. The City of Dallas, 1998 WL 401602 (N. D. Tex. 1998). Notwithstanding, out of an abundance of caution, the Court will engage in analyzing the merits of Cordova's purported First Amendment retaliation claim.

The record is clear that the City does not have a policy statement, ordinance, or regulation allowing retaliation. In fact, the record clearly shows that the City adopted a policy in April 1991 stating that "[s]hould any employee of the City believe that . . . she has been treated unfairly in connection with . . . her job or have any complaint with respect to the discrimination prohibitions detailed above, . . . she may use the grievance procedure outlined below with the assurance that no coercion, discrimination, or reprisals against the employee will follow because of this action." Record Document 23, Resolution attached to Exhibit E (Affidavit of City Clerk). But again, the decision by the Mayor and the Board of Aldermen to terminate Cordova classifies as an official policy for purposes of section 1983 municipal liability under the rationale of Webster.

"To prove a First Amendment retaliation claim, [Cordova] must show that (1) she suffered an 'adverse employment decision'; (2) her speech involved 'a matter of public concern'; (3) her 'interest in commenting on matters of public concern . . . outweigh[s] the [City's] interest in promoting efficiency'; and (4) her speech [substantially] motivated the adverse employment decision." Beattie v. Madison County School Dist., 254 F.3d 595, 601

(5th Cir. 2001) (citing Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir.), *cert. denied* 528 U.S. 1022, 120 S.Ct. 533 (1999). Even if this Court assumes for purposes of this Memorandum Ruling that Cordova satisfies prongs one, two, and three outlined above, she still could not prove prong four, a causal link between her termination and her alleged protected activity. Although Cordova's burden to show that her protected activity was a motivating factor in her termination is not onerous, she must produce at least some evidence that the decision makers had knowledge of her protected activity. See Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 883, n. 6 (5th Cir. 2003) (citing Medina v. Ramsey Steel Co., Inc., 238 F.3d at 684 (5th Cir. 2001). As the Fifth Circuit held in Manning: "If the decision makers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decision makers might have been retaliating against the plaintiff for having engaged in that activity." Manning, 238 F.3d at 883, n. 6; see also Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir. 1999) (stating that "if an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."); Reed v. Efficient Networks, Inc., 2004 WL 1717369 (N.D.Tex.) (granting summary judgment on retaliation claim where plaintiff offered no evidence that decision maker knew of protected activity).

While the record is unclear as to what protected conduct Cordova engaged in, this Court will assume that Cordova's "protected activity" was her 1997 and/or 1998 complaints regarding the City's failure to promote her and her 1997 and/or 1998 complaints to Ruffin, the Public Works Director, regarding Ryals' hostility and derogatory comments about women and blacks. See Record Document 28 at 12. Yet, Cordova has presented no

competent summary judgment evidence that the Mayor's and the Board of Aldermen's decision to terminate her was "substantially motivated" by Cordova's complaints regarding her failed promotion or Ryals' actions or, for that matter, any other unspecified protection action. See Tharling v. City of Port Lavaca, 329 F.3d 422, 427 (5th Cir. 2003). In his deposition, the Mayor admitted that he did know that there had been "problems" involving Cordova "somewhere down the line before [his] time" and that he did not want "reoccurring problems during [his] administration." Record Document 28, Exhibit F (Deposition of Mayor Curtis McCoy) at p. 17, lines 6-9. When asked if he had any problems with Cordova, the Mayor stated that he did not and that she was a nice person. See id. at p. 17, lines 10-13. The Mayor also stated that he "really [did not] know from a personal level as to all of the problems" with Cordova . . . that he "[knew] more since this case here has come up." Id. at p. 17, lines 16-19.[6] Cordova also maintains that the Mayor offered her $5,000.00 to leave the City quietly and that this is evidence that he knew about her employment history

---

[6]In its "Concise Statement of Material Facts as to Which There is No Issue to be Tried," the City stated:

> Mayor McCoy had no involvement with any employment issues concerning Wanda Cordova prior to his election as Mayor, did not know Ms. Cordova and cannot recall even speaking to her.
>
> At the time Mayor McCoy recommended Ms. Cordova's termination he had no understanding about any of Ms. Cordova's prior employment complaints.

Record Document 23, ¶¶ 23 & 29. In response to the first statement, Cordova responded that the statement was not disputed. In her response to the City's second statement, Cordova simply responded: "These facts are disputed."
Again, under Local Rule 56.2 and Fifth Circuit case law, Cordova is required to identify specific evidence in the record to dispute the City's aforementioned statement of fact. This task is not one for the Court to perform. See Ragas, 136 F.3d at 458. Accordingly, the Court deems the City's Statement of Fact #29 admitted, further defeating Cordova's First Amendment retaliation claim.

at the time the decision was made to terminate her. See Record Document 28, Exhibit D (Cordova Affidavit).

The connection between Cordova's protected activity and the Mayor's and Board of Aldermen's decision to terminate is at best tenuous. While Cordova has shown that she was offered a severance package and that the Mayor had knowledge of past employment problems, she has failed to show that he or the Board of Aldermen had knowledge and/or notice of her complaints in 1997 and/or 1998 regarding the City's failure to promote her and Ryals' hostility and derogatory comments about women and blacks. Accordingly, she cannot prove that her complaints in 1997 and/or 1998 substantially motivated her termination, and the City's motion for summary judgment is granted as to Cordova's First Amendment retaliation claim.

### C. Louisiana State Law Claims.

In her complaint, Cordova asserted sex discrimination and retaliation claims under La. R.S. 23:302 *et seq.* and a claim for intentional infliction of emotional distress under Louisiana Civil Code Article 2315. See Record Document 1, ¶ 17. On December 27, 2004, this Court dismissed without prejudice all of Cordova's claims brought pursuant to Title 23 of the Louisiana Revised Statutes. See Record Document 12. Thus, Cordova's only remaining Louisiana state law claim is one for intentional infliction of emotional distress under Article 2315.

A district court may, and the general rule is that it should, decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3); Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir.), cert. denied, 516 U.S. 818, 116 S.Ct. 75

(1995) (district court did not abuse discretion by remanding state law claims). The appropriate disposition of Cordova's remaining state law tort claim for intentional infliction of emotional distress is, therefore, to dismiss it without prejudice.

### III. CONCLUSION.

Based on the foregoing, there are no genuine issues of fact, and summary judgment is appropriate dismissing all of Cordova's section 1983 claims. The Court declines to exercise supplemental jurisdiction over Cordova's claim for intentional infliction of emotional distress pursuant to Louisiana Civil Code Article 2315.

Accordingly, the Motion for Summary Judgment (Record Document 23) filed by the defendant, the City of Mansfield, is granted in part and denied in part. Plaintiff Wanda Cordova's federal claims under 42 U.S.C. § 1983 against the City of Mansfield are dismissed with prejudice. Here state law tort claim for intentional infliction of emotional distress against the City of Mansfield is dismissed without prejudice, as this Court declines to exercise jurisdiction over that claim.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 29th day of August, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE